THE FAIRMOUNT CEMETERY ASSOCIATION OF THE CITY OF
NEWARK

*v.*

THE TRUSTEES OF THE FIRST PRESBYTERIAN CHURCH IN
NEWARK et al.

[Decided April 7th, 1900.   Filed November 17th, 1900.]

A church agreed with certain persons, desirous of organizing a cemetery
association and laying out a cemetery on land of the church, to convey
the land, with the reservation of the right to reserve one-half acre, to be
chosen by it, "for the purposes of a church building;" and pursuant
thereto it conveyed the land to T. and V., two of the persons, who at the
same time executed a declaration of trust, declaring that they held the
land in trust for the actual purchasers (naming them), and, as to one-
half acre, to reconvey it to the church trustees, when it should be located
by them, "for a church site." Thereafter the trustees located the one-half
acre by resolution reciting that they had been requested to locate the site
to be reserved for the purpose of a church according to the condition im-
posed by the resolution of the congregation authorizing the sale. Subse-
quently T. and V. deeded the land, except the one-half acre, to the
cemetery association; the deed reciting, "the remaining half acre * * *
having been reconveyed to the * * * church pursuant to the contract;
they having located and designated the half acre, agreeable to the condi-
tion of the original sale, as that part of said premises which they have,
since the conveyance made by them, resolved to reserve for church pur-
poses." At the same time T. and V. conveyed the one-half acre to the
church, the deed reciting that it had been "reserved as a site for a
church," and was reconveyed "for that purpose," and that "the party of
the second part hereby consent and agree that the said premises shall be
used and occupied for a church."—*Held*, that such restriction inured to
the benefit of the cemetery association, as owner of the adjoining land, in
the absence of evidence that T. and V. were owners of any such land;
that T. and V. had no right to release the church from such restriction;
and that, they having given a release, the church would be enjoined from
selling the land for any other purpose—the declaration of trust and books
of the church not being matters of public record, so as to give notice to a
purchaser that the restriction inured to the benefit of the association.

On demurrer.

*Mr. Edwin B. Williamson,* for the demurrants.

*Mr. Joseph N. Tuttle,* for the complainant.

Fairmount Cemetery Ass'n v. First Presbyterian Church.

PITNEY, V. C.

The facts disclosed in the bill and admitted by the demurrer are as follows: At and before the 24th of May, 1854, the defendant corporation, a religious society in Newark, was the owner of a tract of land situate in the vicinity of Newark, known as the "parsonage woodland," and certain gentlemen, a score or more in number, residents of Newark, were desirous to organize a cemetery association and to lay out a cemetery upon that woodland. The parties agreed upon a conveyance by the defendant of the land in question for the sum of $20,000, with the reservation to it of the right to reserve a tract of half an acre to be chosen and located by the church "for the purposes of a church building." In pursuance of that arrangement a conveyance of the wood-lot was made on the 24th of May, 1854, by the church, to Joseph N. Tuttle and Roswell Van Buskirk, two of the purchasers, as joint tenants, and not as tenants in common, in consideration of $20,000. At the same time, and as a part of the same transaction, Tuttle and Van Buskirk executed a declaration of trust declaring that they held the same in trust for the actual purchasers, naming them, and as to one-half acre,

"to reconvey the same to the said the Trustees of the First Presbyterian Church in Newark when the said half acre should be located by them *for a church site,* to be located in the judgment of said trustees on any part of the tract."

That on the 27th of September, 1854, the board of trustees of the defendant corporation adopted a resolution as follows:

"A request from the purchasers of the parsonage woodland on the South Orange road that the board would locate the site to be reserved for the *purpose of a church according to the condition imposed by the resolution of the congregation authorizing the sale,* having been laid before the board, it was, on motion, Resolved, that the president locate the site for the church aforesaid on the easterly end of the front line of the said premises, the dimensions of the front and depth of the lot reserved to be determined at his discretion, provided the boundaries so determined by him include a half acre."

Shortly after the adoption of that resolution the half-acre lot was actually located by metes and bounds.

Afterwards, on the 9th of February, 1855, the projectors of the cemetery, for whose benefit the title was held by Tuttle and Van Buskirk, caused themselves to be incorporated by an act of the legislature under the name and style of The Fairmount Cemetery Association of the City of Newark, and on the 19th of June, 1855, Tuttle and Van Buskirk executed two deeds of conveyance, one to the complainant of the whole premises except the half acre chosen by the church, the exception being in these words:

"The remaining half acre, part of said premises, having been reconveyed to the said trustees of the First Presbyterian Church, pursuant to contract, they having located and designated the said half acre agreeable to the condition of the original sale as that part of said premises which they have since the conveyance made by them *resolved to reserve for church purposes.*"

And at the same time they made a conveyance to the defendant of the half acre in question by metes and bounds, which deed contained this clause:

"Being a part of the same land and premises conveyed to the said Joseph N. Tuttle and Roswell Van Buskirk by the said party of the second part on the twenty-fourth day of May, eighteen hundred and fifty-four. And this triangular lot as above described, and which contains by estimate fifty-hundredths of an acre, having since that time been located by the said party of the second part, and *reserved as a site for a church,* is reconveyed to them *for that purpose,* pursuant to the understanding and agreement made and entered into between the parties to the original conveyance; and the said *party of the second part hereby consent and agree that the said premises shall be used and occupied only for a church or place of worship, and for no other purpose or purposes whatsoever.*"

This deed was accepted by the defendant.

Tuttle, one of the grantors in that deed, died on the 12th of August, 1886, leaving Van Buskirk surviving, and after his death Van Buskirk, at the request of the defendant, executed a deed of quit-claim dated February 23d, 1889, by which he released and quit-claimed to the defendant the restriction confining the use of the half-acre lot to church purposes. That release contains a recital in these words:

"And whereas it is desired by the said the Trustees of the First Presbyterian Church in Newark to convey the premises mentioned and described in the last-mentioned deed and hereinafter more particularly described *freed from the condition stated in the last above-mentioned conveyance,* and the said Joseph N. Tuttle having heretofore departed this life, now this indenture witnesseth," &c.

This release by Van Buskirk was without the knowledge or consent of the complainant, and the defendant at the time of the filing of the bill was about to sell and convey the half-acre lot free from the restriction contained in the conveyance to it by Tuttle and Van Buskirk. The prayer of the bill is for a perpetual injunction against its so doing, or making use of the deed of release.

The questions raised are—*first,* whether or not the restriction in the deed from Tuttle and Van Buskirk to the church inured to the benefit of the complainant owning the adjoining land; and *second,* if so, is it a proper case for the interposition of this court?.

I am of the opinion that both questions must be resolved in favor of the complainant. It is quite plain that it was part of the original contract of sale from the defendant to the promoters of the cemetery scheme that the lot should be reserved for use for church purposes only. The declaration of trust made by the grantees at the time the deed was delivered to them indicates this, and the resolution of the church as to the location of the half acre also indicates it. Then the church accepted the deed with that restriction in it, and it must have known from the previous declaration of trust that Tuttle and Van Buskirk were mere trustees, without any personal interest in the premises, and that that restriction was not for their personal benefit, but for the benefit of the adjoining property. In fact, the benefit of such a restriction must of necessity attach to the ownership of land, and will not be recognized or enforced by any court at the instance of a mere covenantee at large not the owner of any land affected thereby. In the absence, then, of any statement in the bill that Tuttle and Van Buskirk were at that time individually interested in any other land in the neighborhood, except the original wood-lot, which could be affected by the enforcement

10

of the restriction, the presumption arises that the restriction must have been for the benefit of the balance of the original wood-lot, whether at the moment of the making of the deed to the defendant for the half acre they were the owners of that lot or not. The fact is, as we have seen, that the two deeds were dated the same day, and executed at the same time; so that in order to give any force whatever to the restriction it must have inured to the benefit of the complainant as the owner of the parsonage wood-lot.

For these reasons, I am of the opinion that the restrictions inured to the benefit of the complainant.

In the next place it is alleged in the bill and admitted, and in fact must be inferred from the procuration from Van Buskirk of the release of that restriction, that the defendant intends to devote that lot to other than church purposes, and to put it in the market for general sale. Now that will be a clear breach of the restriction, and the complainant will lose the benefit of the restriction unless it shall be able to prove that the grantee had notice of the restriction put upon the lot, and that it inured to the benefit of complainant's lands. To do that the complainant must rely upon the notice to the purchaser of the contents of the books of record of the defendant and the declaration of trust, which are not matters of public record, it not appearing that the declaration of trust was ever recorded. The complainant should not be subjected to such a risk.

I am of the opinion that it is, under the circumstances, inequitable for the defendant to make the least use of the Van Buskirk release, and that the complainant is entitled to a decree that the release is not binding on the complainant, and that the restriction is in full force and effect, and that the defendant should be restrained from making any use of the release, or from conveying or attempting to convey to any person free and clear of the restriction in question.